THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAHIM AZIZARAB, Defendant-Appellant.

First District (1st Division)   No. 1—99—3552

Opinion filed December 4, 2000.

Rita A. Fry, Public Defender, of Chicago (Robert C. Drizin, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Janet Powers Doyle, and Sharese Shields, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

Following a bench trial, defendant, Rahim Azizarab, was found guilty of child abduction (720 ILCS 5/10—5(b)(1) (West 1998)) and sentenced to 18 months' imprisonment. Defendant filed a timely notice of appeal which vests this court with jurisdiction pursuant to Supreme Court Rule 603. 134 Ill. 2d R. 603.

For the reasons that follow, we affirm.

The issue before this court on appeal is whether defendant was justified in removing his son, in violation of a court order, from the custody of the Department of Children and Family Services (DCFS) based upon the defense of necessity. 720 ILCS 5/7—13 (West 1998).

A.N. was born in February 1997 with cocaine in his system. The court determined A.N. to be neglected by his mother and the man then believed to be the natural father, adjudged a ward of the court and placed in the custody of DCFS on July 8, 1997. In September 1997, defendant appeared in court and requested parentage testing to determine whether he was the biological father of A.N. The test results were positive and defendant was made a party to the pending litigation in April 1998. Defendant pursued his right to obtain legal custody of A.N. During this time, he was granted limited supervised visitation with A.N.

During a supervised visit in July 1998, defendant abducted A.N. from a scheduled visit at a McDonald's restaurant. Defendant and A.N. were discovered in Morris, Illinois, two days later. Defendant was arrested and charged with child abduction[1] .

Thereafter, in November 1998, A.N. was adjudged neglected by defendant and ordered to remain in the custody of DCFS. Defendant was granted twice weekly supervised visits with A.N. at the discretion of DCFS and contingent upon defendant's adherence to certain prescribed rules, including refraining from removing A.N. from the visitation premises.

On April 19, 1999, Linda Lentz, a child welfare specialist for DCFS, took A.N. to defendant's home in Maywood, Illinois, for a scheduled supervised visitation with defendant. When she arrived with the child, defendant allowed A.N. to play in his automobile parked on the street in front of his home. Approximately 20 minutes later, while inside the house, defendant remarked that A.N. had misplaced his only set of keys to the car. Lentz testified that while she was distracted searching for the keys, defendant and A.N. walked out onto the enclosed front porch of defendant's house, played for about one minute and then proceeded to exit the front door. Lentz testified that when she heard the front door close, she looked out the window and saw defendant running with A.N. toward the parked automobile. She tried to open the front door but found it was locked. Lentz saw defendant drive away with A.N. and immediately phoned 911.

Three days later, defendant was arrested in Decatur, Indiana. Officer Gerald Wyss testified he stopped defendant's vehicle because he noticed a small child standing, unrestrained, on the passenger seat. Wyss stated that a routine check on defendant's license revealed it was suspended. The officer placed the defendant and A.N. in the front seat of the squad car and advised defendant his automobile would be towed to the station. Wyss also testified that a routine inventory search of the vehicle yielded a cocked, locked and loaded 9 millimeter handgun and eight rounds of ammunition from a bag on the floor in the backseat, a long, thin-bladed knife recovered from the space between the console and the passenger seat, Soldier of Fortune-type magazines, and over $3,000 in cash. Wyss telephoned the Maywood, Illinois, police department, which faxed a copy of an arrest warrant for defendant for child abduction.

Defendant testified in his own defense at trial. He stated he

---

[1]Defendant was convicted of child abduction and sentenced to two years' probation on April 8, 1999—two weeks preceding the abduction that gives rise to this case.

believed DCFS did not want to relinquish custody of A.N. because it had dragged out the litigation process for over 2½ years. He also stated he was disturbed about A.N.'s health as the child had sustained a head injury that required stitches, an eye injury, various cuts and blisters and he had contracted pneumonia for which he was not medically treated. Moreover, he believed neither DCFS nor the judge was responsive to his concerns. Defendant further testified he had undergone a series of tests required by DCFS and taken a required parenting class but had still not been awarded custody of A.N. He characterized his child as a "hostage" of the State of Illinois. Defendant stated that he removed A.N. from the visitation because he was trying to protect his child and his constitutional rights to the care and custody of A.N.

The trial court rejected defendant's defense of necessity, holding defendant did not meet the requirements of the defense because he was aware that he had other, legal alternatives to enforce his rights to obtain custody of his child. Therefore, abduction was not the sole reasonable remedy available to defendant.

On appeal, defendant frames the issue presented for consideration to this court as follows: "Where a caring father observes the apparent mistreatment of his son during their two year separation in the slow child welfare system with no chance of their reunification in the near future, may he take custody of his son on grounds of necessity?" We answer with a resounding no.

We are certainly sympathetic to defendant's, indeed all interested parties', frustration with the protracted litigation process in child custody disputes. However, we cannot and will not sanction parents taking the law into their own hands because they have become exasperated with that process—and that is exactly what occurred in this case. Defendant's own brief states: "His desire to unite with his son, his perceived danger of his son's injury, and his frustration with the painfully slow reunification process forced him to take matters into his own hands and to retrieve custody of his beloved child." It is clear defendant's abduction of A.N. was borne out of despair—not the legal defense of necessity.

◼ The defense of necessity is defined as:

"Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct." 720 ILCS 5/7—13 (West 1998).

Further, the defense has been construed to apply only in those situa-

tions where the threat of injury sought to be avoided was imminent (*People v. Kite*, 153 Ill. 2d 40 (1992); *Russ v. United States*, 62 F.3d 201 (7th Cir. 1995)) and defendant's conduct was the sole option available to avoid that injury (*People v. Cord*, 258 Ill. App. 3d 188 (1994); *People v. Kite*, 153 Ill. 2d 40 (1992)). After defendant has presented some evidence in support of his defense of necessity, the State has the burden of disproving that defense beyond a reasonable doubt together with all the other elements of the offense. 720 ILCS 5/3—2 (West 1998); *People v. Dworzanski*, 220 Ill. App. 3d 185, 192 (1991). We will not disturb the trial court's determination absent a showing no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237 (1985). Nor will we substitute our judgment for that of the trial court as to the weight of the evidence or the credibility of the witnesses. *People v. Campbell*, 146 Ill. 2d 363 (1992).

■ Initially, we recognize that A.N. was placed in the child welfare system through no fault of defendant and applaud his efforts to obtain custody of his son through legal channels. However, defendant's abduction of A.N. in July 1998 which resulted in both criminal charges being lodged against defendant and a finding of neglect of A.N. by defendant both complicated and prolonged the very process of which he now complains. At the trial of this cause, DCFS caseworker Lentz testified the 1998 abduction adversely impacted defendant's position in the custody proceedings. Thus, defendant's claim that he is a blameless victim entangled in a bureaucratic morass rings hollow.

Furthermore, defendant has not identified nor does the record disclose an imminent danger to A.N. that was averted by defendant's abduction. Defendant cites the cuts, bruises and blisters A.N. sustained over the course of 2½ years while in DCFS custody as evidence of neglect at the hands of his foster parents. However, Lentz testified she was notified each time A.N. sustained an injury or was treated by a physician and each time concluded that the injuries were the result of normal childhood accidents. The trial court concurred with those determinations and defendant presented no evidence to support a contrary conclusion. Consequently, we hold defendant failed to demonstrate any imminent danger to A.N. or himself that he sought to avoid by violating the court's order.

Finally, the evidence presented indicated defendant was well aware that abduction of A.N. was not the sole remedy available to gain custody of the child. Defendant testified he knew the proper channel to achieve this end was to continue to cooperate with DCFS and participate in the litigation process. He chose, however, to circumvent the legal mechanism set up to resolve such issues and instead surrepti-

tiously stole away with the child. Clearly, defendant's conduct in this situation does not meet the requirements necessary to successfully assert the defense of necessity; there was no immediate threat to the health or safety of A.N. and defendant knew there were other, legal courses of conduct he could have pursued to achieve the same goal. Accordingly, we hold the judgment of the trial court was not contrary to the evidence.

In light of the foregoing, we affirm the judgment of the circuit court of Cook County.

Affirmed.

O'MARA FROSSARD and COHEN, JJ., concur.