2026 IL App (1st) 241844-U

Order filed: January 21, 2026

FIRST DISTRICT
THIRD DIVISION

No. 1-24-1844

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 22 CR 06083 |
| | ) | |
| ANTHONY MORRIS, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Martin and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm defendant's conviction and four-year sentence for leaving the scene of a motor vehicle accident involving personal injury. We find no ineffective assistance of trial counsel and no abuse of discretion during sentencing.

¶ 2    Following a bench trial, the court convicted defendant, Anthony Morris, of leaving the scene of a motor vehicle accident involving personal injury (625 ILCS 5/11-401(b) (West 2022)) and sentenced him to four years in prison. On appeal, defendant argues that his trial counsel provided ineffective assistance by failing to argue a necessity defense at trial. Defendant also contends that during sentencing, the court violated the rule against double enhancement by relying in aggravation on a factor inherent in the offense and abused its discretion by imposing a "trial tax" on him for refusing to plead guilty and taking the case to trial. We affirm.

¶ 3     The grand jury indicted defendant under section 11-401(b) of the Illinois Vehicle Code (625 ILCS 5/11-401(b) (West 2022)). Section 11-401 states:

> "(a) The driver of any vehicle involved in a motor vehicle crash[] resulting in personal injury to or death of any person shall immediately stop such vehicle at the scene of such crash, or as close thereto as possible and shall then forthwith return to, and in every event shall remain at the scene of the crash until the requirements of Section 11-403 [for giving identifying information and aid] have been fulfilled. Every such stop shall be made without obstructing traffic more than is necessary.
>
> (b) Any person who has failed to stop or to comply with the requirements of paragraph (a) shall, as soon as possible but in no case later than one-half hour after such motor vehicle crash, or, if hospitalized and incapacitated from reporting at any time during such period, as soon as possible but in no case later than one-half hour after being discharged from the hospital, report the place of the crash, the date, the approximate time, the driver's name and address, the registration number of the vehicle driven, and the names of all other occupants of such vehicle, at a police station or sheriff's office near the place where such crash occurred. ***." *Id.*

¶ 4     Defendant was charged with failing to report the crash to police within one-half hour after leaving the scene, as required by section 11-401(b).

¶ 5     Prior to trial, defendant requested a Rule 402 conference. Ill. S. Ct. R. 402(d) (eff. July 1, 2012). At the conference, the State informed the court about what the evidence at trial would show. Specifically, the State related that on May 8, 2022, the victim's automobile became disabled on the eastbound I-290 expressway. As the victim exited the vehicle, he was struck by defendant's automobile and badly injured. A nearby witness observed the collision. Defendant exited his

automobile, walked over to the witness, and asked to use his cell phone. The witness handed defendant his cell phone, and defendant placed two calls to the same number, neither of which was answered. Defendant returned the cell phone and then walked over to the victim, after which he left the scene on foot, leaving his vehicle behind.

¶ 6 Police officers arrived at the scene, examined the witness's cell phone, and obtained the number that defendant had called. An officer called the number and spoke briefly to someone. After the officer hung up, defendant called him back from the same number and arranged to meet the officer at the police station. Defendant met with the officer the next day, May 9, and admitted to being the sole occupant of the vehicle that struck the victim. Defendant stated that he did not call the police right away because he was scared.

¶ 7 The State informed the court of defendant's criminal history, including two convictions for identity theft and one conviction for delivery of a controlled substance.

¶ 8 In mitigation, defense counsel told the court that the accident occurred because defendant's automobile struck the victim's vehicle, which was stalled on the expressway with its lights off. The collision was not the result of any "bad driving" by defendant. After the collision, defendant exited his automobile and saw the victim and three other persons who had been passengers in the victim's automobile. Defendant was afraid that the three persons could be "quite angry" at him and that they might be armed; defendant's fear was amplified because he had been shot on a previous occasion. Defendant exited the scene to avoid a confrontation. Defendant voluntarily surrendered the next day and made a statement.

¶ 9 At the conclusion of the Rule 402 conference, the court stated that in exchange for a guilty plea, it would agree to sentence defendant to 42 months' imprisonment, which is six months more

than the minimum sentence. The record on appeal does not contain defendant's rejection of the offer, but the case was subsequently set for a bench trial.

¶ 10    At trial, Rafael Zuniga testified that just after midnight on May 8, 2022, he was driving on the eastbound I-290 expressway near Austin Boulevard with three friends. Zuniga's automobile suddenly "shut down" and came to a complete stop in the second lane of the expressway with the lights off. Zuniga decided to retrieve a reflector from the trunk to make his automobile more visible to other vehicles. As he began to exit the automobile, Zuniga was struck by another vehicle and rendered unconscious.  He awoke four days later in the hospital, where he underwent stomach surgery and reconstruction of his left leg. His right leg was amputated.

¶ 11    On cross examination, Zuniga testified that he was not under the influence of alcohol or cocaine at the time of the accident but that the other occupants of his vehicle were drinking.

¶ 12    Diego Jacobo-Chacon testified that in the "evening hours on May 7 into early morning hours of May 8, 2022," he was a backseat passenger in a vehicle bring driven by Zuniga. Two other persons, Danny and Rolando, were also passengers in the vehicle. As they entered the I-290 expressway, Zuniga's automobile suddenly "shut off in the middle lane." Zuniga told his fellow passengers that he was going to exit the vehicle and try to get it started again. As Zuniga stepped out of the automobile, Jacobo-Chacon saw another vehicle strike him. Zuniga was "tossed in the air and he flew back like 10 feet." The collision rendered Zuniga unconscious and caused a visibly severe injury to his right leg and foot. Jacobo-Chacon called the police.

¶ 13    The vehicle that struck Zuniga's automobile came to a stop a few feet in front of them. Jacobo-Chacon saw a thin, black male with dreadlocks exit the vehicle and walk over to check on Zuniga. Rolando said something to the man, but Jacobo-Chacon did not hear what was said. When

the man saw the extent of Zuniga's injuries, he ran away without ever providing his name or any other identifying information.

¶ 14     Cruz Hernandez testified that at approximately 12:20 a.m. on May 8, 2022, he was driving with his wife and four children. As he merged onto the eastbound I-290 expressway at Austin Avenue, a black sedan sped past him, "lost control," and crashed into another automobile that was in the middle lane. The black sedan came to a stop on the left shoulder. Hernandez drove over to the sedan, where he saw defendant standing near the vehicle. Hernandez walked to defendant and noticed that he smelled like "heavy alcohol" and was slurring his words. Defendant asked Hernandez to use his cell phone to call his girlfriend. Hernandez handed him the phone and defendant placed two calls to the same number, which were not answered. Defendant returned the phone to Hernandez, who called 911.

¶ 15     Hernandez went over to the other vehicle and saw Zuniga on the ground with an injury to his leg.  Defendant followed Hernandez and also viewed Zuniga. Defendant then returned to his sedan and Hernandez did not see him again. Defendant never gave Hernandez his name or any other identifying information. The following day, May 9, 2022, Hernandez went to the police station and identified defendant in a photographic lineup.

¶ 16     On cross examination, Hernandez testified that at the time of the collision, he did not see Zuniga exiting his vehicle, nor did he see defendant's automobile strike Zuniga; he only saw the impact between the vehicles themselves. When Hernandez drove over to defendant's sedan, he saw that the air bag had deployed on the driver's side and that defendant's lip was bleeding. Defendant asked Hernandez to take him to the hospital, but defendant later left the scene before Hernandez could do so.

¶ 17    Matthew Dumais, a special agent with the Illinois State Police, testified that he arrived at the accident scene on May 8, 2022, after midnight and observed a black sedan resting against the left median wall and another vehicle in the middle of the expressway in the eastbound lanes. None of the persons involved in the crash were present. Dumais looked up the sedan's license plate number in a law enforcement database and learned that the vehicle belonged to Tijuana Wilson. Dumais texted Wilson the "next day" at an unidentified time and told her that he needed to speak with her. Approximately 16 minutes after the text was sent, defendant called Dumais and identified himself as the driver of the sedan. Defendant agreed to meet with Dumais on May 9.

¶ 18    Dumais testified he spoke with defendant in the afternoon on May 9 at the police station. Dumais gave defendant his *Miranda* warnings and defendant agreed to talk. Defendant stated that in the early morning hours on May 8, he was driving his girlfriend's vehicle on the eastbound I-290 expressway and collided with a vehicle that had its lights off. After the collision, defendant's automobile came to a stop on the left shoulder and he exited his vehicle and spoke with a witness. Defendant asked the witness if he could use his cell phone to call his girlfriend. Defendant then left the scene. At about 10 or 11 a.m. on May 8, defendant called 311 to report the accident and was told to go to the police station. Defendant stated that he went to the police station and spoke with a trooper; however, Dumais testified that there "is no record" of defendant speaking or meeting with any officers prior to his meeting with Dumais.

¶ 19    On cross examination, Dumais testified that defendant stated he left the accident scene because the people in Zuniga's vehicle were cussing at him and he was frightened of them. On redirect examination, Dumais testified that defendant stated that after leaving the scene he went home, where there were cell phones he could have used to immediately call the police. Defendant waited about 10 or 11 hours, until approximately 11 a.m., before calling the police.

¶ 20    Defendant gave a second, videotaped statement to Dumais and another officer at approximately 1:40 p.m. on May 9. The videotaped statement was entered into evidence and played for the trial court. The videotape is contained in the record on appeal and shows defendant giving the same account of the accident as testified to by Dumais.

¶ 21    Following all the evidence, the trial court convicted defendant of leaving the scene of a motor vehicle accident involving a personal injury and sentenced him to four years' imprisonment. Defendant appeals.

¶ 22    First, defendant argues that his trial counsel provided ineffective assistance. To prevail on a claim of ineffective assistance, defendant must show that counsel's representation fell below an objective standard of reasonableness, which prejudiced defendant such that there is a reasonable probability that but for counsel's unprofessional errors, the result of the trial would have been different. *People v. Haynes*, 2024 IL 129795, ¶ 23. Defendant must overcome the strong presumption that the challenged action was the product of sound trial strategy. *People v. Gunn*, 2020 IL App (1st) 170542, ¶ 94. Generally, matters of trial strategy are immune from claims of ineffective assistance of counsel. *Id.* Our review is *de novo*. *Id.* ¶ 91.

¶ 23    Defendant claims that his trial counsel acted ineffectively by failing to raise the defense of necessity at trial. Necessity is an affirmative defense that is forfeited unless raised at trial. *People v. Shepherd*, 2020 IL App (1st) 172706, ¶ 17. To raise the affirmative defense of necessity, defendant must only present slight evidence thereon. *Id.* ¶ 23. Section 7-13 of the Criminal Code of 2012 provides that a defendant claiming necessity must show that (1) he was without blame in occasioning or developing the situation and (2) he reasonably believed that his conduct was necessary to avoid a public or private injury greater than the injury that reasonably might result from his own conduct. 720 ILCS 5/7-13 (West 2022). Defendant's chosen conduct must be the

"sole option available to avoid" the public or private injury. *People v. Azizarab*, 317 Ill. App. 3d 995, 999 (2000). This is because the defense of necessity is viewed as "involving the choice between two admitted evils where other optional courses of action are unavailable" and the chosen conduct promotes a value higher than the value of complying with the law. *People v. Janik*, 127 Ill. 2d 390, 399 (1989). In addition, our supreme court has held that defendant must show that he faced a "specific and immediate threat" for the necessity defense to apply. *People v. Kite*, 153 Ill. 2d 40, 46 (1992).

¶ 24 Defendant argues that there was at least slight evidence supporting the evidence of necessity, such that his counsel was ineffective for failing to raise the defense at trial. First, defendant notes that he is required to show that he was without blame in occasioning the situation precipitating the necessity defense, which in this case means that he must show that he did not cause the motor vehicle accident. Defendant argues there was some evidence that he was blameless in occasioning the accident, where Zuniga's automobile was stopped with its lights off in the middle of the expressway at night such that the accident was unavoidable.

¶ 25 Second, defendant notes that he must show that he faced an immediate and specific threat and reasonably believed that his leaving the scene of the accident was necessary to avoid an injury. Defendant argues there was some evidence that he fled the scene because he reasonably believed he faced an immediate and specific threat of violence from Zuniga's three companions, who were angry at him for striking and injuring Zuniga with his automobile. In support, defendant points out that the accident occurred in the middle of the night, he was alone, and he was fearful because he was facing three persons who were cussing at him and speaking in Spanish, a language he did not understand. Defendant did not know if they were armed or intended to hurt him in retaliation for the accident and therefore he left to avoid any bodily injury to himself. Defendant contends he did

not harm Zuniga by leaving the scene, as Jacobo-Chacon and Hernandez remained with Zuniga and had already called 911 for help. There was nothing more defendant could do for Zuniga under the circumstances. Defendant argues that on this evidence, he has made a showing of ineffective assistance as there was no objective reason for counsel's failure to argue necessity as a defense and there is a reasonable probability that the outcome of the trial would have been different had the defense been formally raised.

¶ 26     The State counters that defense counsel was not ineffective because the record shows that he raised the elements of the necessity defense at trial. Specifically, counsel elicited testimony from Dumais on cross examination that defendant told him he ran away because Zuniga's companions were cussing at him, causing him to become frightened. During opening statement and closing arguments, counsel stated that Dumais' testimony showed that defendant left the scene due to his fear that Zuniga's companions were about to hurt him.

¶ 27     In his reply brief, defendant concedes that "counsel informally raised some elements of the necessity defense." However, he contends that "[t]he fact that counsel did indeed argue the substance of the necessity defense but failed to formally put it before the judge at trial was ineffective, and it prejudiced [defendant] by denying him the chance of the judge viewing his case through the lens of the defense."

¶ 28     We find no ineffective assistance of counsel. As discussed, defendant was charged and convicted under section 11-401(b) of the Illinois Vehicle Code for failing to report to police the place of the crash, the date, the approximate time, the driver's name and address, the registration number of his vehicle, and the names of any other occupants of his vehicle, within 30 minutes after the crash. Even assuming that defendant had a reasonable fear of imminent harm from Zuniga's companions necessitating that he leave the scene immediately to avoid personal injury to himself,

he has shown no reason for why he failed to report the accident to the police within 30 minutes thereof as required by section 11-401(b). Once defendant left the scene, any threat from Zuniga's companions was over, as there is no evidence that any of them followed after him. Therefore, he was no longer under any risk of public or private injury which would legally excuse him from complying with section 11-401(b)'s 30-minute notification requirement.

¶ 29    Instead of reporting the accident to the police within 30 minutes, though, defendant states he waited approximately 10 or 11 hours before speaking with an officer; Dumais testified that defendant in fact waited approximately 36 hours before speaking with police and making the report. Either way, defendant did not make the report within 30 minutes of the accident as required by section 11-401(b) and he presented no evidence of any specific and immediate threat of injury during those 30 minutes after he left the scene which would legally excuse him, under the defense of necessity, from timely making that report. Therefore, necessity was not an available defense to the charge against him and his defense counsel did not act unreasonably or prejudice him by failing to formally raise it at trial. Defendant's claim of ineffective assistance fails. See *People v. Webb*, 2023 IL 128957, ¶ 22 (an attorney is not ineffective for failing to formally make an argument that has no basis in law).

¶ 30    Next, defendant contends that the trial court erred during sentencing by considering Zuniga's injury as a factor in aggravation, as his injury was already a factor in the offense of leaving the scene of an injury accident (625 ILCS 5/11-401(b) (West 2022)). Defendant argues that the single factor of Zuniga's injury cannot be used both as an element of the underlying offense and as a basis for imposing a harsher sentence than otherwise would have been imposed. Such dual use of a single factor is referred to as double enhancement and is not permissible. See *People v. Gonzalez*, 151 Ill. 2d 79, 83-84 (1992). The determination of whether the court made a double

enhancement error is a question of law reviewed *de novo*. *People v. Chaney*, 379 Ill. App. 3d 524, 527 (2008).

¶ 31    To preserve a sentencing issue for appellate review, defendant must make a contemporaneous objection and file a written post-sentencing motion raising the issue. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010); 730 ILCS 5/5-4.5-50(d) (West 2022). In the present case, defendant forfeited review by failing to specifically raise the double enhancement issue in his post-sentencing motion. *People v. Fouts*, 319 Ill. App. 3d 550, 553 (2001).

¶ 32    Even if the sentencing issue had not been forfeited, we still would affirm. Defendant's argument centers on multiple instances during sentencing where the court referred to Zuniga's injury, thereby allegedly violating the rule against double enhancement. First, defendant cites the following statement by the trial court:

> "He is not charged with DUI or agg DUI. He's not charged with reckless—any type of—it wouldn't be reckless homicide, but charged with agg DUI. He is just charged with not fulfilling the affirmative reporting obligations of someone involved in a crash. Particularly, someone involved in a crash where there is serious bodily injury, great bodily harm."

¶ 33    In that statement, the court was merely citing the charge against defendant and was not expressly considering Zuniga's injury as an enhancing factor. We find no error.

¶ 34    Defendant next cites a second statement by the trial court containing multiple references to Zuniga's injury:

> "I don't believe something like this is going to happen again but there were serious injuries here to the victim. Albeit the injuries to the victim are really more concerning to me with regard to the fact that you should have stayed as compared to the fact that it's aggravating because it's leaving the scene of a personal injury and accident no matter how you look at

it failure to report the accident [*sic*]. But that man suffered some serious injuries. I could give you the higher end of sentencing possibilities. I don't think that's going to do you any good. I don't think that's going to do society any good. I do not believe—I think probation would deprecate the seriousness of this offense. But I will sentence you to four years [in the] Illinois Department of Corrections."

¶ 35    Again, we find no error. Careful review of the trial court's comments shows that the court again referenced the crime charged when it stated that defendant was convicted of "leaving the scene of a personal injury and accident." The court twice noted Zuniga's "serious injuries" but stated that those injuries necessitated defendant's staying at the scene and reporting the accident under section 11-401(b), which was "more concerning" to the court "as compared to the fact that [the injuries were] aggravating." We read the court's comments to mean that Zuniga's serious injuries triggered defendant's reporting requirement under section 11-401(b) but were not in and of themselves an aggravating factor justifying a more severe sentence.

¶ 36    Next, defendant contends that his four-year sentence reflects a "trial tax" imposed by the court as punishment for refusing its pretrial offer. Our review is for an abuse of discretion. *People v. Brown*, 2025 IL App (1st) 230772, ¶ 150.

¶ 37    Initially, we note that defendant again forfeited review by failing to raise this specific issue in his post-sentencing motion. *Fouts*, 319 Ill. App. 3d at 553. Even choosing to address the issue on the merits, we find no reversible error.

¶ 38    The United States and Illinois Constitutions grant an accused the right to be tried. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. The trial court may not penalize defendant for declining a pretrial offer during plea negotiations and exercising his constitutional right to trial. *People v. Jones-Beard*, 2019 IL App (1st) 162005, ¶ 26. However, " 'the mere fact that the

defendant was given a greater sentence than that offered during plea bargaining does not, in and of itself, support an inference that the greater sentence was imposed as a punishment for demanding trial.' " *Id.* (quoting *People v. Carroll*, 260 Ill. App. 3d 319, 348-49 (1992)). The evidence must clearly establish that the harsher sentence resulted from the trial demand. *Jones-Beard*, 2019 IL App (1st) 162005, ¶ 26. Such evidence can include the trial court's explicit remarks concerning the harsher sentence "or where the actual sentence is outrageously higher than the one offered during plea negotiations." *Id.*

¶ 39    In *Jones-Beard*, the defendant was charged with aggravated vehicular hijacking and armed robbery. *Id.* ¶ 1. Prior to trial, he participated in a pretrial Rule 402 conference, during which the trial court offered to sentence him to seven years' imprisonment in exchange for a guilty plea. *Id.* ¶ 4. The defendant rejected the offer and proceeded to a bench trial, where he was convicted and sentenced to two concurrent terms of 15 years' imprisonment. *Id.* ¶ 1, ¶ 4. On appeal, the defendant argued that the sentence constituted an unconstitutional trial tax imposed on him for rejecting the pretrial offer. *Id.* ¶ 25. We affirmed in pertinent part, noting that the defendant had offered no evidence, other than the sentence itself, showing it was the product of a trial tax. *Id.* ¶ 27. We held that his sentence "which amounts to just over a twofold increase from the pretrial offer, is not so outrageously disproportionate that we are left only to conclude that it was the product of a trial tax." *Id.* We concluded that the trial court's pretrial offer was best viewed as an acceptable dispositional concession afforded to the defendant in exchange for his guilty plea. *Id.* ¶ 28. After he rejected the plea and was convicted at trial, the resultant 15-year sentence did not constitute an abuse of discretion. *Id.*

¶ 40    Similarly, in the instant case, defendant has offered no evidence, other than the sentence itself, showing it was the product of a trial tax. The four-year sentence, which is only six months

greater than the 3 ½ year sentence offered during the pretrial Rule 402 conference, is not so outrageously disproportionate that we are left to conclude that it was imposed as punishment for demanding trial.

¶ 41 Defendant argues that *People v. Garcia*, 2023 IL App (1st) 172005, and *People v. Dennis*, 28 Ill. App. 3d 74 (1975), compel a different result. We disagree. In *Garcia*, 2023 IL App (1st) 172005, we held that defendant's sentence, after trial, of 100 years' imprisonment for three counts of aggravated criminal sexual assault and one count of aggravated kidnapping constituted a trial tax where it was 64 years more than the pretrial offer, an increase of 177%. *Id.* ¶ 77. In *Dennis*, 28 Ill. App. 3d 74, we held that defendant's sentence, after trial, of 40 to 80 years' imprisonment for armed robbery constituted a trial tax where it was about 20 times greater than the pretrial offer of no more than 2 to 6 years' imprisonment. *Id.* at 78. We further stated:

> "[O]ur holding that petitioner suffered a constitutional deprivation which must be remedied is limited to the facts of the instant case, namely, a sentence imposed following a jury trial approximately 20 times greater than that offered during plea negotiations. We do not intend it to erode the well established principle that a mere disparity between the sentence offered during plea bargaining and that ultimately imposed, of itself, does not warrant the use of our power to reduce a term of imprisonment imposed by the trial court."
>
> *Id.*

¶ 42 The sentence imposed by the trial court in the instant case does not even remotely approach the outrageously disproportionate sentences at issue in *Garcia* and *Dennis*, as it was only six months more than the Rule 402 offer. As in *Jones-Beard*, the pretrial offer of 42 months' imprisonment is best viewed as an acceptable dispositional concession to induce a guilty plea; the

resultant 48-month sentence after the plea was rejected and the case went to trial is not so outrageous as to constitute a trial tax or an abuse of discretion.

¶ 43     For all the foregoing reasons, we affirm the circuit court.

¶ 44     Affirmed.