THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GILBERT CLARK, Defendant-Appellant.

First District (1st Division) No. 1—88—2673

Opinion filed November 26, 1990.

Michael J. Pelletier and Karen Daniel, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Elizabeth Sklarsky, Special Assistant State's Attorney, and Renee Goldfarb and Anne C. Scrivner, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Defendant Gilbert Clark pleaded guilty to the offense of residential burglary. The trial court deferred his sentence and committed him to a drug treatment program, Treatment Alternatives to Street Crime (TASC). When defendant failed to successfully complete the program, the court entered judgment and sentenced him to four years' imprisonment. The issue on appeal is whether the trial court erred when it revoked defendant's probation due to his failure to complete the drug treatment program.

At the hearing on the State's motion to enter judgment, defendant's TASC caseworker testified that on December 21, 1987, defendant was placed in an outpatient TASC treatment program, pending the availability of residential placement. The outpatient program required that defendant attend a clinic twice a week for individual and group counseling sessions. The caseworker testified that prior to February 1988 defendant had complied with the rules prescribed by TASC. On February 23, 1988, a TASC representative telephoned defendant and advised him that he was to be at TASC on the morning of February 25 in order to be placed in a residential treatment program. Defendant failed to keep the appointment. On March 17, 1988, the clinical staff at TASC informed defendant's caseworker that he had not been at, nor had any contact with, TASC for a 30-day period and that he was unsuccessfully dis-

charged from TASC supervision. The caseworker testified that about one week later defendant called him and explained that he was unable to keep his February 24 appointment at TASC because he had been arrested on that date. When asked if defendant had been discharged from the TASC program because he failed to keep that appointment, the caseworker replied "[t]hat is not why he [defendant] was discharged from TASC. He was discharged from TASC for 30-days no show/no contact with the clinic." The caseworker added that "we still would not want him back in the TASC clinic." At this point we note an apparent conflict between the testimony offered at the hearing and TASC's conduct in discharging defendant because he failed to have contact with the agency within a 30-day period. According to the testimony, defendant spoke with a TASC representative on February 23, but he was discharged less than 30 days later, on March 17, for failing to have contact with the agency within a 30-day period.

Defendant testified that he had planned on reporting to TASC on February 25 in order to sign himself into an "in-custody" TASC program, but was unable to do so because he was arrested on the preceding day. Because he was unable to post bond he remained in custody until March 21, at which time the charges were dropped. Defendant stated that while in custody he placed two collect telephone calls to TASC, but that no one would accept the calls. He also testified that he asked a public defender to call TASC, but the individual refused to do so. Defendant indicated that he appeared in court on six separate occasions while in custody, but he did not ask any of the judges for permission to call TASC. Upon his release from jail, defendant called TASC and explained the situation.

The record includes a document from TASC dated March 21, 1988. The document indicates that defendant failed to satisfy the requirements of the program effective March 17, 1988, and that such conduct constituted a failure to comply with the orders and conditions of probation. The document included a "treatment summary report" which provided:

> "December 22, 1987 to March 17, 1988 Mr. Clark [defendant] was orientated to TASC criteria and treatment expectations prior to out-patient placement. Initial reports from the clinical staff indicated that Mr. Clark's overall participation and behavior at the clinic was satisfactory. On February 23, 1988, TASC spoke with Mr. Clark (via telephone) and informed him that TASC had made the necessary arrangements to place him in residential treatment. TASC explained to Mr.

Clark that he was to be at the TASC office on February 25, 1988 at 8:30 a.m. Mr. Clark was made aware of the consequences of not keeping this appointment. Mr. Clark failed to keep this appointment for residential placement. TASC made efforts to contact Mr. Clark and were unsuccessful. On March 17, 1988 TASC received information from the clinical staff that Mr. Clark was unsuccessfully discharged from the clinic for 30 days no contact. Consequently, Mr. Clark was unsuccessfully discharged from TASC supervision effective March 17, 1988."

Before entering judgment the trial court stated:

"The Court would find that not withstanding the fact that the defendant was in custody on 2-24-88, and he remained in custody to March 21st, 1988, that that is not sufficient justification for him not to make—[f]or the TASC Agency to—[t]o compel the TASC agency to accept him back. TASC did terminate as unsuccessful, the treatment program, before the defendant got into it.

Now, there's been some—[t]he defendant has said he was in custody on the other case, but it seems to me that, not withstanding [sic] that fact, that the—[a]nd that he tried to call TASC on two different occasions, that there is [sic] sufficient facilities in the jail so that he could have notified the TASC Agency that he did not—as to tell TASC his whereabouts. He did not do that. And having not done that, although it's not stated, TASC, I don't think, knew where he was. There is no—[t]hat's no excuse for the defendant not to make the effort to get into or to perform his part of the drug abuse program.

There is no testimony here that he sought or told his supervisor in the jail or any supervisory official that—[t]hat he told any person in TASC. There is no testimony—[o]r there's been some testimony rather, that he—[t]hat he was out to various courtrooms during that period of time, but that he did not make any calls indicating, or the inference being, that the Public Defenders did not allow him to do so. He did not approach the Judge or anyone else. I'm—I tend to—I will disbelieve him as far as the Public Defenders are concerned. If you had told them, they had a duty to make that phone call to help out in any way they could.

For those reasons, the judgment of conviction—[l]et me add one more thing. And that is, finally, that the TASC

Agency is an agency provided by the State of Illinois for the purpose of rehabilitation of drug addicts. I'm not certain this Court has a great authority to compel something they don't wish to do, and for those reasons, the judgment will be entered on the conviction."

■ Defendant argues that the trial court erred in revoking his probation. In addressing this claim we are guided by the general legal principle that a reviewing court will not disturb a trial court's order revoking probation absent an abuse of discretion. (*People v. Moaton* (1989), 182 Ill. App. 3d 161, 163, 537 N.E.2d 989.) Given the particular facts of this case, we find that the trial court abused its discretion.

■ The issue in a probation revocation proceeding is twofold: First, whether a probation violation actually occurred, and second, whether the purposes of defendant's probation are being served by his continued liberty. (*People v. Butler* (1985), 137 Ill. App. 3d 704, 712, 484 N.E.2d 921.) Our consideration of this case focuses on the second prong since the fact of a probation violation is undisputed. It is evident that the purpose of placing defendant on probation was to enable him to obtain treatment for his drug problem. Defendant was determined to be an addict who demonstrated a likelihood for rehabilitation through drug treatment. For several months defendant satisfactorily participated in an outpatient program which included his attendance at regular counseling sessions. On February 23, defendant was informed that there was an opening for him at an inpatient residential treatment facility and that he was to report there on February 25. On February 24, he was arrested and remained in custody until March 21, at which time the charges against him were dropped and he was released. According to defendant's testimony, he made some effort to contact TASC during his incarceration and explain his absence, but was unable to do so. TASC unsuccessfully discharged him because of his failure to make contact within a 30-day period.

This case is similar, though not identical, to *People v. Hamelin* (1989), 181 Ill. App. 350, 537 N.E.2d 3, and *People v. Carter* (1988), 165 Ill. App. 3d 169, 518 N.E.2d 1068. In *Hamelin*, the defendant was sentenced to four concurrent six-month terms of imprisonment and four concurrent four-year terms of probation under the supervision of TASC. When the defendant entered jail to begin serving his sentence, he was found to be in possession of cocaine. The appellate court held that the trial court abused its discretion in resentencing the defendant to incarceration without the benefit of a rehabilita-

tion program as prescribed in the original sentence. The court explained that the legislature enacted the Alcoholism and Substance Abuse Act (the Act) (Ill. Rev. Stat. 1985, ch. 111½, par. 6301 *et seq.*),[1] in an effort to restore substance abuse addicts to good health and useful citizenship, that the courts have interpreted the Act as strongly favoring rehabilitation programs for drug addicts in need of treatment and that a trial court should not use its discretion to frustrate the purposes of the Act. *Hamelin*, 181 Ill. App. 3d at 354-55.

In *Carter*, the defendant pleaded guilty to retail theft and was placed on probation for the purpose of receiving drug rehabilitation through TASC. While on probation, he participated in an outpatient program. Before receiving any inpatient treatment for his problem, he committed another retail theft. At the revocation hearing, both the assistant State's Attorney and defense counsel recommended the defendant's placement in an inpatient treatment program. The trial court revoked probation and sentenced defendant to three years' imprisonment. In reversing the trial court, the appellate court stated that while the court is given discretion in granting treatment pursuant to the Act, this discretion should not be used to frustrate the purposes of the Act. (*Carter*, 165 Ill. App. 3d at 175-76.) The court then explained that the case did not involve a situation where the defendant failed to complete his treatment or, having completed it, reverted back to criminal behavior; rather, the defendant never had the opportunity to participate in the inpatient program that the trial court initially prescribed for him since he was still on the waiting list for such a program when he was arrested. *Carter*, 165 Ill. App. 3d at 176.

 Recognizing the factual distinctions between *Carter* and *Hamelin* on the one hand and the case before us on the other, we nonetheless find the reasoning behind those cases persuasive and applicable to our case. Although the trial court is allowed discretion on sentencing matters, it still has a fundamental obligation to exercise that discretion responsibly and in a manner that reflects the constitutional mandate that all penalties shall be determined according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. (See Ill. Const. 1970, art. I, §11.) It is also relevant to consider the policy behind the Act pursuant to which the trial court placed defendant on probation, that

---

[1]This statute has been repealed and replaced by the Illinois Alcoholism and Other Drug Dependency Act (Ill. Rev. Stat. 1989, ch. 111½, par. 6351—1 *et seq.*).

being to provide rehabilitation so that those who abuse drugs may be restored to good health and become productive citizens in the community. (Ill. Rev. Stat. 1987, ch. 111½, par. 6302.) Bearing these policies in mind, we examine the trial court's actions. Originally, the trial court determined that defendant should be treated for his drug addiction, rather than be incarcerated. Defendant demonstrated a level of commitment to his rehabilitation by his satisfactory participation in a TASC outpatient program pending admission to an inpatient residential treatment facility. Before defendant was able to participate in that program he was arrested. While in custody he made some effort to contact TASC. Shortly after his release, he contacted TASC to explain his absence. A revocation of defendant's probation under these circumstances thwarts the fundamental objective of restoring him to useful citizenship, frustrates the purpose of the Act, is contrary to the courts' tendency to interpret the Act to strongly favor rehabilitation and results in an unsatisfactory application of the law to the facts of this case. We also note the unfair result from TASC's questionable enforcement of its "30-day contact" rule given defendant's prior satisfactory participation in its outpatient program, his effort to contact TASC, his reason for being unable to do so and his conduct in contacting them soon after his release from jail.

For the reasons stated above, we find that the trial court abused its discretion in revoking defendant's probation. Accordingly, we reverse the trial court's judgment and remand this case back for further proceedings consistent with this opinion.

Reversed and remanded.

CAMPBELL and MANNING, JJ., concur.