(No. 72917.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. FRANCIS KITE, Appellee.

*Opinion filed October 22, 1992.*

Roland W. Burris, Attorney General, of Springfield, and Darrell Williamson, State's Attorney, of Chester (Kenneth R. Boyle, Stephen E. Norris and Rebecca Sanders, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.

Daniel M. Kirwan, Deputy Defender, and Edwin J. Anderson, Assistant Defender, of the Office of the State Appellate Defender, of Mt. Vernon, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Following a jury trial in the circuit court of Randolph County, defendant, Francis Kite, was found guilty of unlawful possession of a weapon (a knife) by a person in custody of a Department of Corrections facility (Ill. Rev. Stat. 1989, ch. 38, par. 24—1.1(b)). Defendant was sentenced to 15 years' imprisonment to be served consecutive to a previously imposed murder sentence.

At trial, defendant tendered instructions on the affirmative defense of necessity. The trial court held that as a matter of law the defense had not been established. Thus, the court refused defendant's instruction. Defendant appealed. The appellate court (No. 5—90—0440 (unpublished order under Supreme Court Rule 23)), finding that defendant had presented sufficient evidence to warrant the instruction, reversed and remanded the case to the trial court. We granted the State's petition for leave to appeal (134 Ill. 2d R. 315(a)).

The single issue presented for our review is whether the trial court erred in finding that defendant failed to produce sufficient evidence to warrant an instruction on the affirmative defense of necessity. We hold that the trial court correctly refused defendant's instruction. Accordingly, we reverse.

Testimony adduced at trial in this case revealed that defendant was found in possession of the knife on September 23, 1989. Defendant's specific testimony in support of the necessity defense was that he was a member of a white supremacist group, and that in 1988, prison officials and a prison inmate conspired to have him slain by other inmates. Defendant did not provide the names of either the officials or the inmate involved in the alleged conspiracy.

Defendant further testified that, in 1987, there was a race riot at the prison, during which an inmate was killed. Following the riot, prison officials conspired with another inmate to spread rumors to white and black inmates that defendant, who is white, was passing weapons to black inmates so that they could kill white inmates, and that defendant was passing weapons to white inmates so that they could kill black inmates. After the spread of the rumors, defendant was placed in the segregation yard, a high security area, alone, with a group of black inmates. Defendant was attacked. He suffered a

"puncture" in the back of his shoulder and was hospitalized for a period of three days.

Defendant also testified that after learning of the rumors, he met with prison officials and complained. Defendant was told that he was "not going to get [the matter] cleared up." During the meeting, defendant was "maced" by guards. Later, guards told defendant that he "was never going to make it out of Menard alive." After these events, defendant suffered two assaults, but decided not to inform prison authorities. Instead, defendant testified, he attempted, to no avail, to file legal papers and to reach his attorney.

## DISCUSSION

Section 24—1.1(b) of the Criminal Code of 1961, as amended, provides:

> "It is unlawful for any person confined in a penal institution, which is a facility of the Illinois Department of Corrections, to possess any weapon prohibited under Section 24—1 of this Code or any firearm or firearm ammunition, regardless of the intent with which he possesses it." (Ill. Rev. Stat. 1989, ch. 38, par. 24—1.1(b).)

Because culpability is not an element of the offense, it can be considered a strict liability offense. (See *People v. Ryan* (1987), 117 Ill. 2d 28.) Nevertheless, an inmate charged with the offense may assert necessity as an affirmative defense to the charge. See *People v. Govan* (1988), 169 Ill. App. 3d 329; *People v. Tackett* (1988), 169 Ill. App. 3d 397.

Generally, "[t]he quantum of proof necessary to raise an affirmative defense is evidence sufficient to raise a reasonable doubt as to defendant's guilt or innocence." (*People v. White* (1979), 78 Ill. App. 3d 979, 981; see also Ill. Rev. Stat. 1987, ch. 38, par. 3—2.) It follows that a defendant must provide a threshold of some evidence in order to "properly raise the affirmative defense of ne-

cessity." (*People v. Ferree* (1991), 221 Ill. App. 3d 212, 216, citing *People v. Unger* (1977), 66 Ill. 2d 333, 338.) Although the threshold of evidence required to raise an affirmative defense is low, the defendant bears the burden to satisfy that requirement (see *People v. Johnson* (1986), 150 Ill. App. 3d 1075, 1082), and where the defendant presents no supporting evidence, the proffered instruction should be refused (see *People v. Manley* (1991), 222 Ill. App. 3d 896, 913).

In *Unger*, 66 Ill. 2d 333, this court established several factors to be considered in determining whether a defendant has met the threshold of requisite evidence to justify the giving of a necessity defense instruction in the context of prison escape. Subsequently, in *Tackett*, 169 Ill. App. 3d 397, the appellate court adopted three of those factors to determine when an inmate may be entitled to a necessity defense instruction in the context of a case involving the possession of a weapon in prison. Specifically, those factors are: "(1) the prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future; (2) there is no time for a complaint to the authority or there exists a history of futile complaints which make any result from such complaint illusory; and (3) there is no time or opportunity to resort to the courts." *Tackett*, 169 Ill. App. 3d at 402.

The presence of every factor is not required for establishment of a necessity defense. (See *Unger*, 66 Ill. 2d at 342.) A specific and immediate threat, however, constitutes the very nature of a necessity defense; thus, proof of that factor is a threshold requirement for its establishment. Failure to prove the existence of a specific and immediate threat obviates the need to conduct an inquiry into the second and third factors enunciated in *Tackett*.

Further, the defense of necessity arises when a person reasonably believes his conduct, which would otherwise constitute an offense, was necessary to avoid a public or private injury greater than the injury which might have resulted from his conduct. (*Unger*, 66 Ill. 2d at 340.) Absent a specific and immediate threat, an inmate is not faced with such a choice.

Prior to proceeding with our analysis, we note that because these factors go to the weight and credibility of the evidence (see *Tackett*, 169 Ill. App. 3d 397), they are properly determined by the trier of fact. It is well settled that on issues of credibility of witnesses, this court will, necessarily, defer to findings of the trial court. (See *People v. Nitz* (1991), 143 Ill. 2d 82, 95; *People v. Steidl* (1991), 142 Ill. 2d 204, 226; *People v. Jimerson* (1989), 127 Ill. 2d 12, 43.) Furthermore, a reviewing court will not reweigh "the evidence in determining whether an instruction was proper on a certain theory." *People v. Rice* (1982), 108 Ill. App. 3d 344, 353, citing *People v. Kalpak* (1957), 10 Ill. 2d 411.

The State contends that defendant failed to prove a specific and immediate threat. Defendant asserts that by demonstrating a "continuing threat" the specific and immediate threat factor has been satisfied. He maintains that the fact that the threat was continuing makes it no less immediate.

We reject defendant's assertion. We can conceive of a threat as being both continuing and immediate. These conditions, however, may not necessarily exist simultaneously. Thus, notwithstanding the continuing nature of a threat, absent the immediacy, as contemplated by the courts in *Unger* and in *Tackett*, the specific and immediate threat factor has not been satisfied. Moreover, to demonstrate a continuing threat, the defendant would still have to provide some evidence that a specific and

immediate threat existed, albeit over an extended period of time.

Furthermore, to hold that proof of a "continuing threat" satisfies the "specific and immediate threat" factor would result in a broadening of the test. We find such a result untenable. Proof of a specific and immediate threat continues to be the threshold requirement for the establishment of a necessity defense.

The State relies on *People v. Johns* (1991), 220 Ill. App. 3d 1016, *People v. Govan* (1988), 169 Ill. App. 3d 329, and *Tackett*, 169 Ill. App. 3d 397, to demonstrate instances where threats were not found to be immediate and specific and, thus, did not merit a necessity defense instruction. In *Johns*, the court found that evidence of a nonspecific threat three days before a weapon was discovered on the defendant was insufficient to warrant an instruction on necessity. Similarly, in *Govan*, the court found that while the defendant had been threatened, the interval of three to four weeks between the threat and the discovery of the weapon was too lengthy to be considered immediate and specific. Finally, in *Tackett*, the defendant offered testimony that he had been beaten by other inmates 17 months before he was discovered in possession of a weapon. The defendant further testified that he carried the weapon for "self-protection" and "only when he felt it was necessary." (*Tackett*, 169 Ill. App. 3d at 402.) The defendant, however, did not offer evidence to demonstrate any specific threat in the intervening period. The court concluded that while the defendant had suffered from previous acts of violence, there was no evidence of an immediate and specific threat. *Tackett*, 169 Ill. App. 3d at 402.

Here, defendant's vague, uncorroborated testimony, coupled with the length of time between the alleged events, do not support a finding of a specific and immediate threat. The unsubstantiated events about which

defendant testified could have taken place any time between 1987 and the discovery of the knife in 1989. In fact, the alleged events could even have occurred up to 33 months before the discovery of the weapon. On these facts, the trial court could properly find that defendant failed to prove the threshold requirement of a specific and immediate threat.

*People v. Ferree* (1991), 221 Ill. App. 3d 212, we believe, demonstrates a specific and immediate threat. In *Ferree*, the defendant received a note threatening bodily harm the next time the inmates were allowed out of their cells. About an hour later, the inmates were allowed out of their cells. The defendant immediately procured a weapon. The defendant testified that he did not have time to complain to prison officials concerning the threat because there was only one guard available, and in order to reach other guards, the defendant would have had to cross a line of inmates. The appellate court found that the defendant had provided some evidence of an immediate and specific threat and, on remand, ordered that the instruction on necessity be given.

## CONCLUSION

Defendant's entitlement to the necessity defense instruction was for the trial court to decide based on the evidence presented. The trial court could properly have based its refusal to give the instruction on the insufficiency of defendant's evidence, a lack of credible evidence, or both. In any case, we do not find that the trial court erred in its refusal to give the tendered instruction. Accordingly, we reverse the appellate court and affirm the trial court.

*Appellate court reversed;*
*circuit court affirmed.*