James L. RUSS, Plaintiff–Appellant,

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

No. 94–3798.

United States Court of Appeals,
Seventh Circuit.

Argued April 18, 1995.

Decided Aug. 7, 1995.

Gregory A. Friedman, Jr. (argued), Sheldon S. Gomberg, John P. Potter, Chicago, IL, for plaintiff-appellant.

Young B. Kim (argued), Asst. U.S. Atty., Office of the U.S. Atty., Civ. Div., Thomas P. Walsh, Asst. U.S. Atty., Ramune R. Kelecius, Civ. Div., Chicago, IL, for defendant-appellee.

Before BAUER and RIPPLE, Circuit Judges, and REYNOLDS, District Judge.*

BAUER, Circuit Judge.

James Russ brought an action against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2674, seeking damages for injuries he sustained following a struggle with two officers at the Veterans Administration (V.A.) hospital where Russ was a patient. After a bench trial, the district court decided in favor of the United States. Russ appeals the decision.

On January 3, 1990, Russ voluntarily checked into the V.A. Lakeside Medical Center for treatment of lower back pain, an amputated left leg, and an old abdominal wound. On January 11, Russ underwent cataract surgery on one of his eyes. In addition to his treatment, Russ devoted a portion of his time each day to rehabilitation.

On the morning of January 14, Nurse Emma Tolentino was making her rounds and distributing medicine to patients on the twelfth floor of the hospital. When she arrived at Russ's room, he asked her to change the dressing on his abdominal wound. She agreed to do so but not until after she had finished her rounds. At that point, Russ not so kindly suggested that she return to her native Philippines because Filipino–Americans were making too much money in the United States. Tolentino returned the compliment by suggesting that Russ, an African–American, return to Africa. Enraged, Russ threatened to throw a bottle at Tolentino. Tolentino left the room and called the V.A. security.

Deciding that he no longer wished to remain in the care of the hospital, Russ got into his wheelchair and called his niece from a pay phone in the hall. While he was on the phone, Officers Robert Allen and Naomi Taylor arrived at the scene. They heard Russ declare his intent to leave the hospital and heard him scream into the phone, "I want you to come over here and kill this bitch!" After Russ had completed his call, Allen told Russ that he could not leave unless he had first signed an "Against Medical Advice" discharge form. Allen then advised Russ to return to his room.

Instead, Russ started for the service elevators. The officers stopped him by each grabbing one of his arms. When Taylor left the scene to obtain assistance, Russ punched Allen in the face with his free hand. Taylor then returned with the Nurse Supervisor and the three succeeded in calming Russ down.

Subsequent to this incident, Russ experienced pain in his neck. After receiving treatment for several months, doctors determined that Russ had a mildly herniated disc that would need surgery. Russ maintained that his injuries were the result of Allen jerking his neck back in the process of subduing him.

Russ filed this action against the United States, the Department of Veteran Affairs, and the officers, alleging assault, battery, and false imprisonment. Pursuant to 28 U.S.C. §§ 2679(a), (b), the district court dismissed the Department of Veterans Affairs and the officers.[1] The trial court held a bench trial spanning two days at which the defendant's expert, Dr. David Shenker, testified that Russ's injury could have just as easily been caused by the punch Russ threw at Allen and by his continuous resistance as it could have been by any force applied by Allen. The trial court found that under the Illinois doctrine of necessity, the officers were justified in their use of force to restrain Russ. The court also held that the officers' actions were justified by hospital policy and

---

* The Honorable John W. Reynolds, United States District Judge for the Eastern District of Wisconsin, is sitting by designation.

1. These provisions ensure that, absent explicit authorization to the contrary, FTCA claims are brought against the United States and not against the agencies and their employees. Russ does not appeal this decision.

alternatively, that Russ's injuries were not proximately caused by the officers' actions. Russ attacks this decision, arguing that the court erred in finding justification and not finding proximate cause. Because we believe the trial court was correct in its application of the necessity doctrine, we assume without deciding that Russ proved proximate cause and we do not address whether hospital policy justified the officers' actions.

■ Russ contends that his appeal poses a question of law and should be reviewed *de novo*. Closer inspection of his brief reveals, however, that he is actually contesting the trial court's factual findings. We review those findings for clear error and will reverse only if we are left "with the definite and firm conviction that a mistake has been committed, a conviction we cannot reach if the trial judge chose between permissible views of the evidence." *Roper v. Peabody Coal Co.*, 47 F.3d 925, 927 (7th Cir.1995) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)).

■ Illinois law provides that a person who has committed a wrongful act will be relieved of liability if that person: (1) "was without blame in occasioning or developing the situation;" and (2) "reasonably believed that such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct." 720 ILCS 5/7–13.[2] Russ challenges the second of these requirements; he contends that there was no basis for the officers to believe that Russ's conduct presented the threat of greater injury.

■ To qualify for the defense of necessity, a defendant must demonstrate that the threat of injury which the defendant sought to avert was imminent. *People v. Kite*, 153 Ill.2d 40, 178 Ill.Dec. 769, 772, 605 N.E.2d 563, 566 (1992). Russ argues first that any threat of injury which he posed to himself was not sufficiently immediate as to warrant the necessity defense. He maintains that the officers could have taken less drastic measures such as accompanying him while he retrieved his street clothes and talking to him while he awaited his ride home.

As they appear in the record, however, the facts certainly support the officers' beliefs. They observed an elderly man dressed in only a hospital gown with a bandage around his abdomen and a patch over his eye attempting to go out into the freezing winter weather in a wheelchair. His rude behavior and fits of rage did little to make him appear competent to formulate decisions about his well-being. Upon seeing him, the officers had no reason to believe that he was in any condition to be outside alone and every reason to believe that he should be restrained at least until he was calm and rational. Russ's claim that the officers failed to act in a less severe manner requires that we attribute to the officers knowledge that they did not have at the time. Though he claims that he was going to change into street clothes before he left, he never told anyone of this intention. Though he claims that he was waiting for a ride, his testimony indicates it was his intention to use public transportation. The facts, as found by the trial court, support the conclusion that the officers believed that Russ was about to leave the hospital immediately and in doing so would subject himself to very real peril.

■ Alternatively, Russ contends that the fact that Allen told Russ he could not leave without signing the "Against Medical Advice" discharge form indicates that Allen believed Russ to be competent. In light of this belief, Russ insists it was unreasonable for Allen to restrain him physically.

This argument misstates the significance of Allen's comment. Allen came upon a visibly handicapped man and heard him state his intention to leave the hospital. Doubtful as to whether this was the proper thing to do and in an effort to gauge Russ's rationality, Allen sought to determine whether Russ's decision had been approved. If anything, the fact that he advised him about the "Against Medical Advice" discharge form is evidence

2. Though actually a criminal statute, the necessity doctrine as manifested in the statute has been accepted as a defense in civil cases. *City of* *Chicago v. Mayer*, 56 Ill.2d 366, 308 N.E.2d 601, 604 (1974).

that from what Allen had seen and heard of Russ, Allen believed it was not a good idea for him to leave the hospital in his condition. Nothing Russ did subsequent to this should have changed Allen's mind.

Finally, Russ argues that the defense of necessity should not be available here because it would work to deprive him of his constitutional rights. Russ did not include a constitutional claim in his complaint, nor did he argue it below. It is therefore waived. *Citizens Ins. Co. of America v. Barton*, 39 F.3d 826, 828 (7th Cir.1994). Moreover, the availability of such a claim has been squarely rejected by the Supreme Court. *Federal Deposit Ins. Corp. v. Meyer*, —— U.S. ——, ——, 114 S.Ct. 996, 1001, 127 L.Ed.2d 308 (1994). The reasoning is straightforward. The FTCA makes the United States liable to the same extent as a private person would be according to the law of the place where the act occurred. 28 U.S.C. § 1346(b). Because "law of the place" refers to state law, and state law cannot provide liability for the violation of a federal constitutional right, constitutional wrongs cannot be remedied through the FTCA. *Meyer*, —— U.S. at —— - ——, 114 S.Ct. at 1001–02.

Russ has failed to persuade us that the trial court's decision finding that the V.A. officers' actions were justified by necessity was erroneous. Stated simply, the officers had a reasonable basis to believe that Russ's conduct posed a threat to his own health. The trial court's decision is therefore

AFFIRMED.