# Illinois Official Reports

## Appellate Court

---

### *People v. Gullens*, 2017 IL App (3d) 160668

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEITH R. GULLENS, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-16-0668 |
| Filed | October 24, 2017 |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 15-CF-331; the Hon. H. Chris Ryan, Jr., Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Matthew J. Mueller, of Cortina, Mueller & Frobish, P.C., of Morris, for appellant.<br><br>Karen K. Donnelly, State's Attorney, of Ottawa (Patrick Delfino, Lawrence M. Bauer, and Jasmine Morton, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion.<br>Presiding Justice Holdridge and Justice Lytton concurred in the judgment and opinion. |

**OPINION**

¶ 1       This case exemplifies the adage: "No good deed goes unpunished." Defendant, Keith R. Gullens, argues that the circuit court erred in revoking his conditional discharge for committing the offense of being a felon in possession of a weapon. The evidence at the revocation hearing showed that defendant possessed a firearm, which either his younger brother or a friend (the record is unclear which) had stolen, for approximately 10 minutes for the purpose of returning the firearm to the store. Defendant argues that the affirmative defense of necessity applied to him or, alternatively, fundamental fairness required that the court deny the State's petition to revoke defendant's conditional discharge. We agree.

¶ 2                                         FACTS

¶ 3       Previously, defendant pled guilty to theft (720 ILCS 5/16-1(a)(1)(A) (West 2014)) in exchange for a sentence of 30 months' conditional discharge. As terms of his conditional discharge, the court ordered defendant not to violate any criminal statutes and to refrain from possessing a firearm or dangerous weapon. Approximately one month later, the State filed a petition to revoke conditional discharge. The petition alleged that defendant violated his conditional discharge by committing the offense of possession of a weapon by a felon (720 ILCS 5/24-1.1 (West 2016)).

¶ 4       The court held a hearing on the State's petition to revoke conditional discharge. The State submitted a certified copy of conviction showing that defendant had been convicted of criminal damage to property, a Class 4 felony, in 2012.

¶ 5       The State called Michael Centko as its first witness. Centko testified that he was employed by South Post Guns, a store that sold firearms and related items. On June 20, 2016, defendant came to the store. Centko could not remember if defendant had purchased anything, but said defendant might have purchased some ammunition. Later that day, defendant returned to the store with a Glock 42 and gave it to Centko. Defendant told Centko that his younger brother had stolen the gun. Centko reviewed the store's surveillance footage from earlier that day. The video recording revealed that a man who entered the store with defendant stole the Glock 42 while Centko was in a different area of the store talking to defendant about magazines or cleaning brushes. Centko said he had no reason to believe defendant saw the man take the gun. The State played the video footage from the security camera in court.

¶ 6       Detective Brad Demoss testified that he learned that a burglary occurred at South Post Guns on June 22, 2016. While investigating this incident, Demoss learned of an incident that occurred two days prior in which defendant had returned a stolen gun to the store. Demoss reviewed footage from the store's security cameras from June 20. Demoss determined that Gerald Bumper had stolen the gun. After Bumper grabbed the gun, he handed it to Rashad Anchondo. Defendant and Darrell Gullens were in the store when Bumper stole the gun. When defendant returned the gun later that day, Anchondo and Shane Rexroad were with him. Demoss did not speak to Bumper about the incident because Bumper was murdered shortly after the incident. Demoss spoke to defendant about the incident. A video of the interview was played in court.

¶ 7    Demoss opined that as soon as defendant grabbed the gun from Anchondo, he violated the law. The following exchange occurred between defense counsel and Demoss on cross-examination:

"Q. Okay. I guess if [defendant] had called the police and said —he still would have been in violation of the law as soon as he grabbed the gun; is that right?

A. If he would have called the police, in my opinion, when he found out that [Anchondo] and [Bumper] had stolen the gun and said this is what happened, this is where the gun is, at that point I would consider him to be a witness as opposed to a suspect.

Q. And you're saying had he never possessed—

A. Had he never possessed the weapon.

Q. Okay. And if he doesn't, if he doesn't—it's all safe to say if he doesn't possess the weapon, he doesn't have control over that item; is that right?

A. That's right.

Q. So, he can't be sure that that item is going to be there when the police show up? The guy could leave; is that right?

A. Yes, sir.

Q. And it's also fair to say that it takes a certain type of criminal to actually steal a gun. That's a serious crime; right?

A. I believe so, yes.

Q. And the type of person that is willing to reach behind the counter and take a Glock, that's the type of person that could also be capable of violence?

A. Potentially, yes, sir.

Q. Okay. And it's fair to say that reporting to the police that that happened could have potentially, from his perspective, [defendant's] perspective, subjected him to violence; isn't that right?

A. Yes, sir.

Q. And I guess overall, overall arching, arching thing that we are dealing with here, it's certainly better that the gun was returned to the person that owned it than staying out on the street. Can we all agree to that?

A. I can agree to that."

¶ 8    The State rested.

¶ 9    Defendant moved for a directed verdict, arguing that the State's evidence supported a necessity defense. Defendant contended that he took the gun from Anchondo in order to return it to the store because he did not want it in the public. Defendant argued that by possessing the gun for a few minutes, he avoided a public harm significantly greater than him possessing a firearm. The State argued that the necessity defense did not apply because defendant failed to establish that an actual real harm was going to occur if he did not return the gun to the store. The court denied the motion for a directed verdict.

¶ 10    Defendant called Damires DeLeon, the mother of his children, as his first witness. DeLeon testified that on the day of the incident, she asked defendant to go out and compare the costs of guns. DeLeon's father had recently obtained a firearms owner's identification (FOID) card, and DeLeon wanted to give him the money to buy a gun as a gift.

¶ 11    Rexroad testified he attended a party with defendant and Anchondo on the date of the incident. Anchondo pulled out a gun and showed it to Rexroad and defendant. Defendant became upset and asked Anchondo where he obtained the gun. Anchondo told defendant he had taken it from the store. Defendant said he would take it back. Defendant immediately returned the gun to the store. Anchondo and Rexroad went with defendant to return the gun. The drive to the store took approximately 5 to 10 minutes.

¶ 12    Defendant testified that he went to South Post Guns on the date of the incident because DeLeon had asked him to determine the approximate cost of a gun. DeLeon wanted to purchase a gun for her father. Anchondo went with defendant because he wanted to apply for a FOID card. Bumper also went with them. Defendant testified that Anchondo was not a felon, but Bumper might have been a felon. Defendant believed that he purchased a cleaning kit for DeLeon's father at the store. Defendant did not purchase any ammunition. When defendant left the store, he went to Anchondo's girlfriend's house to drop off Anchondo and get high. Anchondo showed defendant a gun and said he had stolen it from South Post Guns. Defendant took the gun from Anchondo. Defendant returned the gun to the store approximately 5 to 10 minutes later.

¶ 13    Defendant explained that he returned the gun because he did not want to get into trouble. Defendant returned the gun himself because he did not believe Anchondo would return it, and everyone he knew with a valid FOID card was at work. Defendant said the gun could have been sold in Chicago and used for crime. Defendant explained that his only goal in possessing the gun was to return it to the store. Defendant said he did not take the gun to the police because he was a felon and he did not want to get in trouble. Defendant testified that he did not participate in the burglary that occurred at the store two days later.

¶ 14    During closing argument, defendant argued that the affirmative defense of necessity applied. The State contended that the defense of necessity did not apply. The State argued that the necessity defense applied only to "real, actual harm" and not "some potential harm that maybe falls on someone at some point in time."

¶ 15    The court found that defendant violated his conditional discharge by being a felon in possession of a weapon. The court determined that the defense of necessity did not apply. The court reasoned:

> "Whether or not necessity is going to rise to the level, the accused has to have a reasonable belief such conduct was necessary to avoid a public or private greater harm.
>
> There is something to be said about this actuality. It has to be something present, as opposed to potential future—especially in a Petition to Revoke.
>
> It doesn't take much. I mean, it's a lesser standard. It's not beyond a reasonable doubt when the State carries their burden with it. I appreciate the argument.
>
> Just to point out a few things.
>
> [Defendant] knew that [Anchondo], in his opinion, said [Anchondo] is not a felon. And [Anchondo] went back to the store with him, and he's standing next to him.
>
> Yeah. I'm just, I have some—I think there was other ways that it could have been dealt with. I understand what he's putting forth. I can't say anything else."

¶ 16    The court resentenced defendant to three years' imprisonment.

ANALYSIS

Defendant argues that the circuit court erred in granting the State's petition to revoke his conditional discharge because the affirmative defense of necessity applied or, alternatively, fundamental fairness required that the court deny the petition to revoke because the purposes of his conditional discharge were served by his continued liberty. We address each argument in turn.

I. Necessity

First, defendant argues that the circuit court erred in granting the State's petition to revoke conditional discharge because, although he committed the offense of being a felon in possession of a weapon, the affirmative defense of necessity applied to justify his conduct. We find that the defense of necessity applied to defendant's conduct in briefly possessing a stolen firearm to return it to the store, and the circuit court's finding to the contrary was against the manifest weight of the evidence.

At a hearing on the State's petition to revoke conditional discharge, the State has the burden of proving a violation of a condition of conditional discharge by a preponderance of the evidence. 730 ILCS 5/5-6-4(c) (West 2016). "[A] revocation of conditional discharge will be overturned only when it is contrary to the manifest weight of the evidence." *People v. Smith*, 337 Ill. App. 3d 819, 822 (2003). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008).

In section 7-13 of the Criminal Code of 2012, the affirmative defense of necessity is defined as follows:

> "Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct." 720 ILCS 5/7-13 (West 2016).

The defense of necessity "is viewed as involving the choice between two admitted evils where other optional courses of action are unavailable [citations], and the conduct chosen must promote some higher value than the value of literal compliance with the law [citation]." *People v. Janik*, 127 Ill. 2d 390, 399 (1989).

Here, the State does not dispute that defendant was without blame in occasioning or developing the situation that resulted in the theft of the gun. Defendant testified that he did not know that Bumper and Anchondo had stolen the gun until after they left the store. Centko testified that, after reviewing the video recording from the security camera, he had no reason to believe defendant saw Bumper take the gun. Additionally, the evidence showed that defendant reasonably believed that returning the gun was necessary to avoid a greater public or private injury than committing the offense of being a felon in possession of a weapon. Defendant explained that he did not want to get into trouble for the theft of the gun, and he believed the gun could have been sold in Chicago and used for crime. Returning a stolen firearm to its rightful owner undoubtedly promoted a higher value than refraining from being a felon in possession of a weapon for the 10 minutes it took to return the gun to the store.

¶ 24    We also find that defendant established that there were no other courses of action available to him. Defendant testified that he did not believe Anchondo would return the gun on his own because he had helped steal it. This belief was reasonable. Defendant also said that he did not know anyone available with a valid FOID card to return the gun. Had defendant called the police and reported the stolen gun without taking possession of the gun, it is uncertain that the police would have recovered the gun. We acknowledge that both the circuit court and the State have taken the position that there were other alternatives available to defendant. However, beyond suggesting the unlikely scenario that Anchondo would have returned the gun himself without defendant possessing it, the State gave no explanation as to what other options were available to defendant.

¶ 25    We note that our supreme court has held that a defendant must show that he faced a "specific and immediate threat" for the necessity defense to apply. *People v. Kite*, 153 Ill. 2d 40, 46 (1992). We are inclined to believe that a specific and immediate threat to public safety occurs any time a stolen firearm is out on the street, as a stolen firearm may never be transferred legally.

¶ 26                                    II. Fundamental Fairness

¶ 27    Defendant alternatively argues that fundamental fairness demanded that the court deny the State's petition to revoke conditional discharge because the purposes of defendant's conditional discharge were served by his continued liberty. While we need not reach this alternative argument in light of our above holding, we agree with defendant and address the argument in the interest of clarity.

¶ 28    "The issue in a probation revocation proceeding is two-fold: first, whether a probation violation actually occurred, and second, whether the purposes of defendant's probation are being served by his continued liberty." *People v. Butler*, 137 Ill. App. 3d 704, 712 (1985).[1] "[T]he purpose of probation is to benefit society by restoring a defendant to useful citizenship, rather than allowing a defendant to become a burden as an habitual offender." *People v. Meyer*, 176 Ill. 2d 372, 379 (1997). "Probation simultaneously serves as a form of punishment and as a method for rehabilitating an offender." *Id.* One of the goals of probation is to protect the public from the sort of conduct that led to a defendant's conviction. *Id.*

¶ 29    We note the holding in *People v. Clark*, 206 Ill. App. 3d 741 (1990). In *Clark*, the State filed a motion to revoke the defendant's Treatment Alternatives to Street Crimes (TASC) probation. *Id.* at 742. The State presented evidence showing that the defendant failed to keep a TASC appointment, and TASC discharged him from the program for having no contact with TASC for 30 days. *Id.* at 742-43. The defendant testified that he was unable to attend his TASC appointment because the police arrested him the day before his appointment, and he remained in custody for several weeks until the State dropped the charges. *Id.* at 743. He made several collect calls to TASC, but no one would accept the calls. *Id.* The defendant also asked his public defender to call TASC, but he refused to do so. *Id.* After being released from jail, the

_____

[1]We consider cases concerning revocation of probation interchangeably with cases concerning revocation of conditional discharge, as the statutory requirements are virtually the same in either type of revocation proceeding. See 730 ILCS 5/5-6-4 (West 2016); *People v. Tufte*, 165 Ill. 2d 66, 74 (1995) ("Revocation of a defendant's conditional discharge is governed by the same statutory requirements that are applicable where the State seeks to revoke a defendant's probation.").

defendant called TASC and explained the situation. *Id.* The circuit court revoked the defendant's probation. *Id.* at 744-45. The *Clark* court held that the circuit court abused its discretion in revoking the defendant's probation. *Id.* at 745. The court noted that it was undisputed that the defendant had committed a probation violation but found that the purposes of the defendant's probation—namely, to obtain treatment for his drug problem—were being served by his continued liberty. *Id.* The court reasoned:

"A revocation of defendant's probation under these circumstances thwarts the fundamental objective of restoring him to useful citizenship, frustrates the purpose of the Act, is contrary to the courts' tendency to interpret the Act to strongly favor rehabilitation and results in an unsatisfactory application of the law to the facts of this case." *Id.* at 747.

¶ 30    Defendant violated his conditional discharge. However, as in *Clark*, given the unique circumstances of the violation, revoking defendant's conditional discharged "thwarts the fundamental objective of restoring him to useful citizenship" and "results in an unsatisfactory application of the law to the facts of this case." *Id.*

¶ 31    Here, defendant possessed the stolen firearm for approximately 10 minutes. Defendant testified that his only intent in possessing the gun was to return it to its rightful owner, and the State has presented no evidence to the contrary. Though defendant technically committed the offense of being a felon in possession of a weapon for the approximately 10 minutes he possessed the gun, defendant acted to avoid the greater harm of the stolen firearm being out on the street where it most likely would have been sold and used for criminal purposes. In this way, defendant's possession of the gun actually served to protect the public. We deem this a good thing. The facts of this case suggest that but for defendant's presence and actions, another illegal gun would have been in the hands of criminals. We deem that a bad thing. Due to the unique extenuating circumstances of this offense, we believe that the purposes of defendant's conditional discharge—*i.e.*, defendant's rehabilitation and protection of the public—are served by his continued liberty. As such, we find that the circuit court's revocation of defendant's conditional discharge was against the manifest weight of the evidence. *Deleon*, 227 Ill. 2d at 332.

¶ 32                                          CONCLUSION

¶ 33    For the foregoing reasons, we reverse the judgment of the circuit court of La Salle County revoking defendant's conditional discharge. We remand for further proceedings consistent with this order.

¶ 34    Reversed and remanded.