NOTICE

Decision filed 05/04/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220216-U

NO. 5-22-0216

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 21-CF-758 |
| | ) | |
| M'KEAL L. JAMES, | ) | Honorable |
| | ) | Thomas E. Griffith Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CATES delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The judgment of conviction is reversed where the State failed to present sufficient evidence to establish the defendant's guilt beyond a reasonable doubt.

¶ 2    Following a bench trial, the defendant, Mi'Keal[1] L. James, was convicted of unlawful possession of a weapon by a felon. The defendant was sentenced to 11 years in the Illinois Department of Corrections. On appeal, the defendant claims that there was insufficient evidence to prove his guilt beyond a reasonable doubt. The defendant also raises a claim of ineffective assistance of counsel and challenges the sentence imposed by the circuit court. For the following reasons, we reverse.

_____

[1]The defendant's brief and the record show that the defendant's name is Mi'Keal L. James and not M'Keal L. James.

1

¶ 3                                    I. BACKGROUND

¶ 4     On June 1, 2021, at approximately 2 a.m., the defendant was standing in the parking lot of Wood Plaza Mart, in Decatur, Illinois, along with several other individuals. Multiple gunshots were fired in the defendant's direction and nearby car windows shattered. The defendant ducked into a car, grabbed a gun from inside of the car, and returned fire. The defendant was subsequently charged with two counts of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2020)) and one count of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2020)).

¶ 5     On December 9, 2021, the circuit court held a bench trial. The State called officer Lucas Bray as its first witness. Bray was dispatched to the shooting incident at Wood Plaza Mart after multiple people had reported gunfire in that area. When Bray arrived at the crime scene, most of the cars had left. Bray and other officers searched the lot for evidence. Another officer had found nine 9-millimeter shell casings in front of the business on the north side of the building. Additional casings were found on the northeast corner of the parking lot. Bray had collected five .40-caliber shell casings and one 9-millimeter casing. Those casings were admitted as exhibits 3 and 4, respectively.

¶ 6     Bray had also observed broken glass on the sidewalk and blood in the parking lot in front of the building, located near the 9-millimeter shell casings collected by another officer. He had spoken to a homeowner that had a projectile in their fence. Bray had additionally observed that the gas station had a bullet hole in a high window on the north side of the building.

¶ 7     Officer Stephen Kennedy with the Decatur Police Department testified after Bray. Kennedy testified that when facing Wood Plaza Mart, the laundromat is on the left side of the building, a chicken restaurant is in the middle, and a convenience store which was connected to a

gas station was on the right side. Shell casings were found near the door of the convenience store. Kennedy identified nine shell casings that he collected on June 1, 2021, and they were admitted into evidence as exhibit 2.

¶ 8    Eric Havens testified that he was employed with the City of Decatur as a patrol officer. On June 1, 2021, he was patrolling with Bray. Havens spoke with an employee of Wood Plaza Mart and obtained a surveillance video.

¶ 9    The State presented a written stipulation of evidence marked as exhibit 9. The parties stipulated that Officer Ganley met with a resident, Kent Riddle, and viewed surveillance footage taken from Riddle's home surveillance system. Ganley recorded the video from the surveillance system with a police department cell phone. The parties stipulated to the authenticity of the video surveillance footage marked as exhibit 1. Officer Ganley had also collected shell casings marked as exhibits 5, 6, and 7. Exhibit 5 was one "WIN 40 S&W" shell casing found in the grassy area in the northeast corner of the parking lot of 1207 E. Wood Street. Exhibit 6 was two "WIN 40 S&W" shell casings found in the grassy boulevard north of 1283 E. Wood Street. Exhibit 7 was two "CCI 9MM LUGER" shell casings located in the grassy area in the northeast corner of the parking lot. The parties stipulated to the admission of the evidence collected by Ganley.

¶ 10    The State's witness, Detective Massey, was quarantined due to COVID-19 prior to trial. The parties additionally stipulated that if he were called to testify, Massey would have testified that he reviewed the surveillance videos and was able to identify the defendant as one of the shooters.

¶ 11    The circuit court admitted and viewed exhibit 1, which contained three videos. Two of the videos were from the nearby resident's surveillance system and the other video was from the Wood Plaza Mart surveillance system. The residential surveillance videos depicted people standing on

3

the side of the house. Those individuals fired shots into the parking lot then fled in front of the house on foot.

¶ 12   The video from the Wood Plaza Mart showed a parking lot and gas station pumps with over 25 cars. Multiple people were standing in the parking lot amongst a row of parked cars and people were walking through the parking lot. All of the cars, but one, had backed into the parking spaces. The front of the cars faced the gas pumps and back of the cars faced the video surveillance. There was an overhang on the building which blocked the view of anyone standing near the building behind the parked cars. The video did not have audio recording.

¶ 13   The defendant was not present at the start of the video. A woman wearing a blue wig exited a car and the defendant walked into view from the bottom right side of the video. The defendant spoke to and walked towards the women in the blue wig. The defendant then walked a couple feet towards the adjacent parked car. A man in a blue jacket was leaning against the driver's side of the car when the defendant approached.

¶ 14   The driver's door of the two-door car was open. Only the driver's side of the car was visible on the bottom right side of the video. The video does not show what occurred on the passenger side of the car. Additionally, the inside of the car was not visible.

¶ 15   Another man walked in front of the cars towards the car parked to the left of the defendant. Then, the people standing by gas pumps dropped to the ground. The man walking in front of the of the cars fell to the hood of the car to the defendant's left. That man then crouched down and ran behind the parked cars. The window of the open driver's door near where the defendant was standing shattered. Then, the window on the passenger door to the car parked on the left side of the defendant shattered. While the windows shattered, the defendant ducked down and sat inside the driver's seat. The man in the blue jacket ducked down behind the defendant. That man leaned

4

over the defendant and reached out his right arm inside of the car. Other individuals that were standing in the parking lot took cover inside or behind the parked cars.

¶ 16    Within a few seconds, the defendant emerged from the car and fired a gun. Cars began to flee the parking lot. The defendant first shot in the direction of a moving car. The defendant then turned towards the right and continued to fire a gun while he backed up behind the parked car he had just exited. The man in the blue jacket stayed behind the defendant and then went behind the parked car, off camera.

¶ 17    After the defendant stopped firing, the parking lot quickly cleared. People jumped into cars as they pulled away from the parking lot. The defendant appeared to talk to people standing behind the car and he received something. The defendant then went back to the driver's seat as another man was talking to him. The man went around the back of the car, off camera. The defendant waited a few seconds and then drove away. The car was dark and other passengers were not visible.

¶ 18    After the videos were shown, the circuit court asked whether the defendant shot towards Mr. Riddle's house where the other individuals were located. The parties agreed that the defendant fired the weapon in that direction.

¶ 19    The State additionally introduced exhibit 8, which was a certified copy of the defendant's prior conviction. After the circuit court reviewed and admitted exhibits 1-9, the State rested. The defendant did not present evidence.

¶ 20    During closing arguments, the State first addressed the defendant's self-defense claim to the aggravated discharge of a firearm. The State acknowledged that the defendant had fired his weapon in response to hearing shots fired and in response to a person who had been shot near the defendant. The State argued that the defendant was not acting in self-defense because the defendant started firing in the wrong direction. The State then addressed the affirmative defense of necessity.

5

The State argued that the defendant had physical possession of a firearm when he went to the parking lot before any shots were fired.

¶ 21    The defense argued that the shooting started on the northeast corner of the parking lot. The car windows shattered, and the defendant ducked down and into the car. The defendant then exited the vehicle with a gun and fired back in response to the shots fired in his direction. The video showed a car in the parking lot of the gas station moving west and the defendant had a reasonable concern that the shots came from that direction. After additional shots were fired at the defendant, he realized the location of the threat. The defense argued that the defendant had acted reasonably under the circumstances to defend himself and others in the parking lot. The other shooters were never identified.

¶ 22    The defense further argued that no evidence was presented that the defendant had possession of a firearm prior to the incident. No evidence was presented regarding the ownership of the vehicle or that the defendant had been in the car prior to hearing gunshots. The defense additionally argued that it was the State's burden to show where the weapon came from, and that evidence was not presented. The defendant possessed the weapon in necessity after he was fired upon.

¶ 23    The circuit court then continued the matter for further argument after the circuit court had an opportunity to review the video surveillance. On December 16, 2021, the circuit court allowed for the parties to present additional evidence or additional argument. No further evidence was presented. The parties made additional arguments regarding the defendant's claim of self-defense.

¶ 24    The circuit court found that the evidence was insufficient to prove the defendant guilty beyond a reasonable doubt as to counts I and II for the charge of aggravated discharge. The court reasoned that the defendant was being fired upon. Windows to the defendant's left and right were

shot out and someone in front of the vehicle was shot. The defendant's actions were reasonable under the situation.

¶ 25    The circuit court found that the evidence was sufficient to prove the defendant guilty as to count III and the defense of necessity did not apply. The defendant had constructive possession of the gun before the shooting incident began. The circuit court found that it was clear that the defendant had brought the gun to the parking lot because he knew where the gun was located.

¶ 26    The defendant filed a motion to set aside judgment of conviction. The defendant, through his written motion, argued that the defense of necessity applied as the defendant possessed the firearm because he was in mortal danger. The defendant had not caused the situation. The defendant reasonably believed that his conduct was necessary to prevent injury or death to himself and others. The State had not proven beyond a reasonable doubt that the defendant exercised immediate and exclusive control over the area where the firearm was found. The State presented no evidence that the defendant had been in the motor vehicle prior to the shooting incident and no evidence was presented as to who owned the car. The State argued that the circuit court had the opportunity to hear all of the evidence during the bench trial regarding the defendant's constructive possession of the firearm. The circuit court denied the defendant's motion.

¶ 27    The sentencing hearing took place on February 1, 2022. The circuit court stated that the defendant faced an enhanced sentence with a sentencing range from 7 to 14 years, with a 1-year term of mandatory supervised release and he was eligible for day-to-day credit.

¶ 28    The defendant testified that on the night of the incident he was with his cousin. His cousin drove, owned the car, and was the owner of the gun. The defendant believed that his cousin was the target that evening, but he did not know who had opened fire. The defendant testified that he

saw the gun when he entered the car to escape the gunfire. Then, he grabbed the gun and used it to defend himself.

¶ 29    The State questioned the defendant about the direction that the defendant fired, arguing that the defendant had fired "four shots indiscriminately into the crowd" because he had possession of a weapon. The State recommended the maximum sentence of 14 years due to the defendant's criminal history and the nature of the events in this case.

¶ 30    The defense asked the circuit court to depart from the sentencing guidelines and sentence the defendant to five years in the Illinois Department of Corrections. In the alternative, the defendant sought the minimum sentence of seven years.

¶ 31    The circuit court stated:

> "I understand that [the defendant] was acting under duress. In terms of whose gun it was, maybe it was his cousin's gun. Maybe it was his gun. He certainly knew where the gun was, and immediately reached for it, and certainly knew how to handle the gun."

The court considered the facts of the case, factors in aggravation and mitigation, and the presentence investigation report. The defendant was sentenced to 11 years in the Illinois Department of Corrections followed by 1 year of mandatory supervised release.

¶ 32    Following the sentencing hearing, the defendant filed a motion to reconsider the sentence. The defendant argued that the State presented evidence during the sentencing hearing that the defendant endangered others by firing a weapon. The defendant, however, was found not guilty of aggravated discharge of a firearm because he acted in self-defense. The defendant argued that it was improper for the circuit court to consider the defendant's actions as aggravation at sentencing. The defendant's motion was denied. This appeal followed.

8

¶ 33                          II. ANALYSIS

¶ 34    On appeal, the defendant argues that the State failed to prove that the defendant was guilty of unlawful possession of a weapon by a felon where the defendant had asserted an affirmative defense of necessity. The defendant additionally argues that his counsel provided ineffective assistance and the circuit court relied upon an improper factor at sentencing.

¶ 35    The State had the burden of proving the defendant's guilt beyond a reasonable doubt. *People v. Crowder*, 2018 IL App (1st) 161226, ¶ 21. When the defendant argues that the State failed to present sufficient evidence for a conviction, we consider "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, viewing the evidence in the light most favorable to the prosecution." *People v. Hopkins*, 201 Ill. 2d 26, 40 (2002). A criminal conviction will be reversed for insufficient evidence where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt. *People v. Gray*, 2017 IL 120958, ¶ 35. The determinations of the trier of fact are afforded great deference; however, they are not conclusive. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001).

¶ 36    The defendant was convicted on the charge of unlawful use or possession of weapons by a felon pursuant to section 24-1.1(a) of the Criminal Code of 2012 (720 ILCS 5/24-1.1(a) (West 2020)). The State argues that the defendant's guilt was based on the constructive possession of a weapon. "To prove that defendant constructively possessed the weapon, the State had to establish that defendant (1) had knowledge of the presence of the weapon and (2) had immediate and exclusive control over the area where the weapon was found." *People v. McIntyre*, 2011 IL App (2d) 100889, ¶ 16.

¶ 37    The defendant raised the affirmative defense of necessity. The defense of necessity applies where:

9

"Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct." 720 ILCS 5/7-13 (West 2020).

Once an affirmative defense has been raised, the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt to that issue. *Crowder*, 2018 IL App (1st) 161226, ¶ 21.

¶ 38     We note that circuit court found that the defendant was acting in self-defense when he fired the weapon and insufficient evidence was presented to find the defendant guilty of aggravated discharge of a firearm. The State concedes that the defendant's conviction should be reversed on the grounds that he possessed the weapon out of necessity if the defendant did not constructively possess the weapon prior to the time he grabbed and fired the weapon. The State, however, argues that circumstantial evidence supported the finding that the defendant had constructive possession of the weapon before the shooting took place.

¶ 39     The State contends that reasonable inferences may be drawn to establish that the defendant had constructive possession of the weapon before he was fired upon. However,

"[a] reasonable inference within the purview of the law must have a chain of factual evidentiary antecedents. If an alleged inference does not have a chain of factual evidentiary antecedents, then within the purview of the law it is not a reasonable inference but is instead mere speculation." *People v. Davis*, 278 Ill. App. 3d 532, 540 (1996).

¶ 40     The State did not present evidence of ownership of the gun or the parked car. Ownership of the weapon was not clear. The circuit court believed that the weapon could have belonged to the defendant's cousin. The State argues that the defendant had knowledge of the gun before the shooting based on how quickly he retrieved the weapon. Yet, no evidence was presented that the defendant had been inside the car prior to the start of the gunfire. The inside of the vehicle and the location of the gun were not visible on the video surveillance.

10

¶ 41    We also note that the video surveillance did not have audio and no evidence was presented on whether someone had informed the defendant about a weapon. Specifically, the man who had reached over the defendant while the defendant was inside of the car could have quickly directed him to a weapon. It is also plausible that the weapon was kept in a visible location.

¶ 42    A person's knowledge of the location of a weapon is not the equivalent of possession and the proximity to the item at issue is not sufficient to show possession. *People v. Day*, 51 Ill. App. 3d 916, 917 (1977). Regardless of whether the defendant had knowledge that a weapon was kept inside the vehicle, the State was also required to show that the defendant had immediate and exclusive control over the weapon.

¶ 43    The video surveillance was the only evidence presented by the State regarding what had occurred prior to the shooting. The defendant was not present at the start of the video. When the defendant appeared on the video, he walked towards a woman in a blue wig that had exited a car. Then, the defendant walked a couple feet to the adjacent parked car next to a man in a blue jacket leaning against the car. Multiple people were present and standing near the driver's side of the car that contained the weapon. The video does not show the passenger side of the car. When the shooting began, the defendant ducked into the closest vehicle, as did others. The man in the blue jacket also ducked down near the driver's seat and leaned into car. We cannot conclude that the evidence established that defendant had control, or the ability to exercise control, over the weapon before the shooting began.

¶ 44    We reverse the defendant's conviction. This ruling makes it unnecessary to address the defendant's ineffective assistance of counsel and sentencing issues.

¶ 45                                  III. CONCLUSION

¶ 46    Accordingly, the defendant's conviction and sentence are hereby reversed.

11

¶ 47    Reversed.